Simon, J.
This action is instituted by the collateral relations and heirs at law of one Constance Etié, deceased, late wife of the defendant, for the purpose of recovering from the latter, who is in possession thereof, all the property belonging to the succession of the deceased, consisting in divers articles of real and personal property, slaves and sums of money, by her brought into and inherited during the marriage; and of her half of the acquets and gains made during the said marriage.
The petition avers, that the defendant claims to be the owner of the estate of the deceased, under and by virtue of a certain instrument of writing purporting to be the last will and testament of his late wife, which has been annulled and avoided by a judgment of this court, as a nuncupative testament by public act,* and which is also null and void as a nuncupative testament under private signature, for divers reasons stated in the petition.
The defendant joined issue, by alleging, first, that he is the owner and possessor of his wife’s estate by good and valid titles. He further sets up, that under the clauses and stipulations contained in the marriage contract, passed between him and his late wife on the 23d of June, 1818, in which the parties thereto mutually agree that all the property then owned, or that should be thereafter acquired by either of the parties in any manner whatsoever, should belong to the survivor, in case there should be no children born during the marriage; and there having been no issue from the said marriage, he is entitled to all the property, rights and credits left at her death by his late wife.
He further bases his claim to his wife’s estate upon two testaments, executed at two different periods in the intended form of nuncupative testaments by public acts, but which are good and valid as nuncupative testaments under private signature, and in which his said wife instituted him her universal heir and legatee.†
The Judge, a quo, being of opinion that the testaments pro *33 duced were invalid and informal as acts under private signature, but that the fifth clause of the marriage contract, passed in 1818, should have its effect so far only as being a mutual donation of the property then brought into the community by the spouse who should die first, and of the profits arising therefrom, ordered that the defendant should retain in his possession all the property owned by his wife on the day of the marriage as specified in the marriage contract, and all the profits made subsequently therefrom and by the joint industry of both ; and that the plaintiffs should recover all property given to, or inherited by the deceased, after the date of the said marriage contract; and from this judgment the defendant has appealed.
The first clause in the marriage contract stipulates that, “ there shall be a community between them, the said parties, which shall comprehend all their estate, real and personal, present and to come? The second establishes the amount brought in by the husband. The third specifies the property owned by the wife at the date of the marriage, and which is then brought into the community.
The fourth says : !t In case there shall be a child or children produced by the said marriage, and either the said future husband or wife shall die, the property brought into this community by the one that shall die first, together with the profits arising out of this community, shall be equally divided between the surviving husband, or wife, as the case may be, and the children of said marriage.”
And the fifth is in these words: “ In case of the death of either the husband, or wife, without having a child or children by the marriage, the amount of the property brought into this community by the one that shall die first, with the profits arising from this community, shall revert to the surviving husband or wife, as the case may be.”
We cannot agree with the Judge, a quo, in the opinion that the general expression of the first clause of this marriage contract in relation to the future property of either of the spouses, is counteracted or modified by what he calls the more special expressions of the fourth and fifth articles. The latter are necessarily to be governed by what the parties understood in the first *34 clause to compose the community therein stipulated. Such community is to comprehend all their estate, real and personal, present and to come; and when, in the subsequent clauses, they stipulated that the property brought into the community by the one that shall die first, should be equally divided between the surviving spouse and the children of the marriage, or in case of there being no issue from said marriage, shouldrevert to the surviving husband or wife, they must have understood the words, “ property brought into this community," with reference to what they had previously said should compose that community, to wit, “ all their estate real and personal, present and to come." The two last clauses are to take their effect only at the death of either of them, and it seems to us, that the words, “ brought into," taken in the sense which they must have, not at the time of the marriage, but at the time of its dissolution by the death of one of the parties, refer to the whole community ; that is to say, to all the property of which it is composed; wherein, under the first clause, is necessarily included the property brought into it at any time by either of the spouses.
We are bound to give effect to all contracts according to the true intent of the parties ; and such intent is to be determined by the words of the contract, when they are clear and explicit. Civ. Code, art. 1940. One of the rules of interpretation of contracts is, that where there is a doubt as to the true sense of the words of a contract, they may be explained by referring to other words or phrases used in making the same contract. Civ. Code, art. 1943. The true meaning of its terms should be looked for by endeavoring to ascertain what was the common intention of the parties. Civ. Code, art. 1945. And all clauses of agreements are to be interpreted the one by the other, giving to each the sense that results from the entire act. Civ. Code, art. 1950. Here then, if there was a doubt as to the extent of the word “ bi-ought," used by the parties in clauses which cannot have any legal effect before the period of the dissolution of the marriage, it should be construed in reference to, and in connection with the first clause, which is positive in its terms, and which fixes in a definite manner what property the community is to be composed of; and thus it is clear to our minds, that the *35 parties never intended that any of the property by them brought respectively into the community during the marriage, should be excluded from its mass, when, after its dissolution, such property, under the fourth article, is to be equally divided between the surviving spouse and the children of the marriage ; or, according to the fifth clause, is to revert to, (to go to, or to be kept by,) the surviving husband or wife, as the case may be. This view of the marriage contract, renders an inquiry into the validity of the testaments unnecessary.
Voorhies and T. H. Leiois, for the plaintiffs.
J. P. Conrad and Splane. for the appellant.
It is, therefore, ordered and decreed, that the judgment of the District Court, be annulled and reversed, and that ours be wholly in favor of the defendant, with costs in both courts.

 See. the ease oí the Succession of Sparks, infra.

 There was no issue of the marriage.